**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHNATHAN ROBINS, as an** | : | **CIVIL ACTION** |
| **Individual and on behalf of his son,** | : | |
| **JOHNATHAN ROBINS, JR.** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JUDGE MICHAEL F.X. COLL, et al.** | : | **NO. 11-7501** |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                                November 6, 2012

In this *pro se* civil rights action, plaintiff Johnathan Robins ("Robins") alleges violations of his and his minor son's constitutional rights.  He has named as defendants an unidentified "Master Judge," Judge Michael Coll of the Delaware County Court of Common Pleas, the Delaware County Court - Domestic Relations Division (collectively, "judicial defendants"), and Michael Ward, a Pennsylvania Department of Public Welfare County Assistance Office caseworker ("Ward").  Robins' complaint against the judicial defendants stems from alleged violations of his Fourteenth Amendment rights throughout child support proceedings involving Robins' minor child, including Judge Coll's decision to hold Robins in contempt of court and to lodge a detainer against him.  Robins' complaint against Ward is that Ward interfered with his right to care for his child by allowing the child's maternal grandmother to file for medical assistance under "her welfare plan" on behalf of the child.

**Factual and Procedural Background**

As alleged in the complaint, Robins is the father of Johnathan Robins, Jr. ("child"), who was born on February 20, 2008.  *Pl.'s Am. Compl.* at 2.  While his son was in his custody, in the spring of 2008, the child's maternal grandmother, Lucille Freeman

("Freeman"), added the child to her welfare plan.  *Id.* at 2-3.  Because the child was covered by Freeman's welfare medical plan, Robins could not get health insurance for the child with Blue Cross Blue Shield through the Philadelphia Health Center.  *Id.* at 3. Robins called Michael Ward, a case worker for the Delaware County Department of Public Welfare ("DPW"), to advise him that he and his wife were primary caretakers of the child.  *Id.*  Although Ward advised him that he would immediately remove the child from Freeman's welfare plan, he did not.  *Id.*  In the summer of 2008, Robins once again attempted to get health insurance for the child.  *Id.*  Again, it was denied.  *Id.*  In November 2008, Robins took the child to a health clinic in Philadelphia, where he discovered that the child was covered by DPW under Keystone Health Insurance.  *Id.* at 3-4.  When Robins called Keystone Health Insurance, he was informed that he could not have the child covered at the health clinic because the child was under Freeman's insurance and "control."  *Id.* at 4.

In December 2008, at a child support hearing before Master Judge,[1] Robins contended that Freeman's filing for medical assistance for the child was illegal because he and the child's mother were married and were the primary caretakers of the child.  *Id.* Nonetheless, Master Judge ordered Robins to pay child support.  Due to an alleged confusion regarding Robins' occupation, Master Judge assessed Robins' income at $3,466 per week and ordered him to pay $851 per month in child support.  *Id.* at 5. Robins claims his income was actually well below the poverty level, but Master Judge did not give him an opportunity to present any proof of his actual income.  *Id.*  Master Judge also advised Robins that she would order him to take over responsibility for the

---

[1] In his complaint, Robins brings the claim against Master Judge as a "judge of Delaware County Court Domestic Division" and states that he does not remember Master Judge's name.  *Pl.'s Am. Compl.* at 2.

child's healthcare and that such an order would take the child off Freeman's welfare plan. *Id.* Master Judge apparently never issued such an order. *Id.*

Robins appealed the decision of the Master Judge and a hearing was scheduled for March 17, 2009. *Id.* at 5-6. Due to his incarceration in Philadelphia County Prison, Robins did not appear in court and his appeal was dismissed. *Id.* at 6. When he contacted the Delaware County Court to reschedule, he was told that due to his incarceration and inability to pay, his financial obligation would be assessed at zero and his arrears would be remitted without prejudice. *Id.*

On May 20, 2009, at a hearing Robins was neither notified of nor allowed to attend, Judge Michael Coll found Robins in contempt for not appearing at the March 17 hearing and "placed a detainer against Robins so he would not be released from . . . prison." *Id.* As a result, on June 19, 2009, when Robins posted bail, he was immediately transferred to Delaware County Prison. *Id.* He was released from Delaware County Prison on July 22, 2009. *Id.* On August 26, 2009, Judge Coll found Robins willfully in contempt and sentenced him to thirty days in prison. *Id.* at 7. Robins was immediately taken into custody. *Id.* Robins attempted to appeal the contempt order, but his effort was impeded by Judge Coll who ordered Robins to pay for transcripts of the hearing, even though he was proceeding *in forma pauperis. Id.*

On December 15, 2011, Robins filed this action under 42 U.S.C. §§ 1981, 1983, and 1985. In the complaint, he asserted First Amendment, due process, and equal protection violations on his own behalf and on behalf of his child. After the judicial defendants and Ward filed motions to dismiss, Robins requested leave to amend his complaint. On May 1, 2012, leave was granted to file an amended complaint and both

motions to dismiss were denied without prejudice.  On June 1, 2012, Robins filed an amended complaint.  The amended complaint asserted the same constitutional violations by the two judges, but dropped claims against Ward in his official capacity. Defendants moved to dismiss the amended complaint.  On July 25, 2012, Robins filed a second amended complaint, which purports to re-brand his First Amendment claims as arising out of the Fourteenth Amendment.[2]  Robins seeks injunctive and monetary relief.

## Standard of Review

In examining motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we accept all of the well-pleaded allegations in the complaint as true.  *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003), *cert. denied* 541 U.S. 959 (2004).  Additionally, we consider the *pro se* plaintiff's pleadings deferentially, affording him the benefit of the doubt where one exists.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

A motion to dismiss for failure to state a claim "tests the legal sufficiency of plaintiff's claim."  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006), *cert. denied*, 550 U.S. 903 (2007).  Where a bar to relief is apparent from the face of the complaint, dismissal under Rule 12(b)(6) may be granted.  *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).  With these standards in mind, we accept as true the facts as they appear in Robins' complaint and draw all possible inferences from these facts in his favor.

---

[2] Because Robins' claims are being dismissed on other grounds, we need not reach the question of whether he correctly pleads all of the elements of a substantive due process violation.

## Discussion

### Claims on Behalf of the Minor Child

Parents, who are not attorneys and are acting *pro se*, may not bring claims in federal courts on behalf of their children. *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010) (citing *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991)). The right to counsel belongs to the child. *Osei-Afriyie*, 937 F.2d at 883. Parents cannot waive this right. "[I]t is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (internal citations omitted)).

Robins, a non-lawyer choosing to litigate this case *pro se*, may not bring claims on behalf of his minor child. Therefore, all claims made by Robins on behalf of his minor son will be dismissed.[3]

### Judicial Immunity and the Judicial Defendants

Coll and Master Judge are protected by absolute judicial immunity. Their acts were performed in the course of judicial proceedings and in their judicial capacities.

Judges enjoy absolute immunity for judicial acts performed in cases over which they have jurisdiction. *Gallas, v. Sup. Ct. of Pa.*, 211 F.3d 760, 768-69 (3d Cir. 2000); *Feingold v. Hill*, 521 A.2d 33, 36 (Pa. Super. Ct. 1987). Even legal or factual error,

---

[3] Plaintiff claims that he should be allowed to bring claims on behalf of his son even though he is a *pro se*, non-lawyer. *Pl.'s Mem. Opp'n to Ward's Mot. to Dismiss*, at 7, Doc. No. 22. He cites several cases which he believes stand for this proposition. However, none of those cases are on point. The vast majority of these cases concern parents appealing administrative denials of Supplemental Security Income ("SSI") benefits. This is a limited exception to the general rule. The only case that does not involve SSI benefits is *Winkelman v. Parma City Sch. Dist.*, which explicitly states that the Court did "not reach petitioners' alternative argument, which concerns whether [the Individuals with Disabilities Education Act] entitles parents to litigate their child's claims *pro se*." 550 U.S. 516, 535 (2007).

personal malice, or the performance of an act in excess of jurisdiction will not remove the cloak of judicial immunity. *Gallas*, 211 F.3d at 769; *Feingold*, 521 A.2d at 36.

The protection of judicial immunity is lost only when a judge performs a non-judicial act or acts in "complete absence of all jurisdiction." *Gallas*, 211 F.3d at 768-69 (citations omitted); *Feingold*, 521 A.2d at 36. Evaluating whether a judge has acted in complete absence of all jurisdiction focuses on the nature of the act and the expectations of the parties. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The *Stump* Court discussed the distinction between the lack of, rather than excess, jurisdiction with the following examples:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)). Moreover, judicial acts are distinguished from mere administrative acts. *Gallas*, 211 F.3d at 769-70; *see also Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that a judge was acting in an administrative capacity, rather than his judicial capacity, in terminating a subordinate court employee).

Judicial immunity also covers prospective injunctive relief. Although *Pulliam v. Allen*, 466 U.S. 522 (1984), held that judicial immunity did not extend to injunctive relief, the holding was abrogated by Congress when it enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, § 1887 (1996). Section 309(c) of FCIA amended 42 U.S.C. § 1983, and now provides, in relevant part, that "in any action brought against a judicial officer for an act or omission taken in such officer's

judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42. U.S.C. § 1983 (2006). As a result, judicial immunity now extends to actions that seek prospective injunctive relief. *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (unpublished opinion) ("the 1996 amendment to § 1983 bar [plaintiff]'s claims for injunctive relief against the state court judges").

Robins alleges that Master Judge violated his rights when she forced him to pay child support to a non-caregiving third party. *Pl.'s Am. Compl.* at 8-9. Similarly, Robins claims that Judge Coll discriminated against him by forcing him to pay child support to a non-caregiving third party and holding him in contempt when he could not do so. *Id.* at 11. These allegations relate to judicial acts done during court proceedings.

Assessing child support and issuing a judicial order are routine, typical functions of judges. The parties expected Master Judge to assess child support and Judge Coll to determine the merits of the matter, specifically, whether Robins was required to pay child support and should have been held in contempt for refusing to obey a court order. *Stump*, 435 U.S. at 362-63; *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 & n.9 (3d Cir. 2000) (finding that judicial immunity barred suit against a state municipal judge who had ordered that a contempt order be executed summarily, despite the fact that the summary execution of the order was contrary to state procedures).

Robins argues that Judge Coll and Master Judge acted without jurisdiction. According to Robins, because Freeman did not have standing to bring the case, the judges never had jurisdiction to hear the case and consequently are not protected by

absolute judicial immunity. Even if Freeman did not have standing in the state court, the judicial defendants would still be covered by judicial immunity. Master Judge and Judge Coll did not rule in instances where there was a complete absence of jurisdiction. Specifically, Judge Coll had the authority to issue the contempt order and was engaged in normal court business in his judicial capacity when he issued it. *Stump*, 435 U.S. at 362-63; *Feingold*, 521 A.2d at 37. Only acts performed in the clear absence of all judicial authority will subject judges to liability. *Gallas*, 211 F.3d at 771 (internal citation omitted); *see also Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Because Judge Coll and Master Judge did not act in the clear absence of all judicial authority, they are immune. Thus, the claims against them must be dismissed.

The <em>Rooker-Feldman</em> Doctrine

The *Rooker-Feldman* doctrine precludes Robins' claims against the Judicial Defendants and the Delaware County Court Domestic Relations Division.[4] Robins' claims are nothing more than a challenge to state court decisions.

The *Rooker-Feldman* doctrine deprives a federal district court of subject matter jurisdiction over an action seeking to appeal and reverse a state court decision. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). Therefore, a federal court may not consider a claim that would require either determining that the state court judgment was erroneously entered or taking action that would negate the judgment. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005).

The *Rooker-Feldman* doctrine applies where: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3)

---

[4] Application of the *Rooker-Feldman* doctrine can be raised *sua sponte*. *See In re Madera*, 586 F.3d 228 (3d Cir. 2009) (upholding *sua sponte* determination of bankruptcy court that it lacked subject matter jurisdiction because of the *Rooker-Feldman* doctrine).

those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotations and brackets omitted), *cert. denied*, __ U.S. __, 131 S.Ct. 1798 (2011).  The second and fourth factors are critical in determining whether a federal suit presents an independent, non-barred claim. *Id*.

All four requirements are met here.  Robins alleges constitutional violations resulting from adverse decisions in state court with regard to welfare entitlement and child-support.  He contends that Master Judge erroneously assessed his income and ordered him to pay too much in child support.  He also argues that Judge Coll erroneously held him in contempt.  Robins is now asking a federal court to determine that the state court judges' determinations were incorrect.  This action is an appeal from state court judgments.  Under *Rooker-Feldman*, we have no jurisdiction to consider such a claim.  Therefore, Robins' claims for damages and injunctive relief against the Judicial Defendants will be dismissed.

*The Action Against Defendant Ward*

Lastly, Robins contends that Ward interfered with his right to care for his child by allowing the child's grandmother to file for medical assistance under her welfare plan on behalf of the child. *Pl.'s Am. Compl.* at 7.

Even though parents have a protected fundamental liberty interest to care for and guide their children, *see Troxel v. Granville*, 530 U.S. 57, 65 (2000), the parents still have to make out a constitutional violation required to maintain an action under § 1983. *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).  The right of parents to care for and guide their children is "neither

absolute nor unqualified." *Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256, 262 (3d Cir. 2007) (quoting *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005)).

In *Anspach*, the Third Circuit set the contours of state action that infringes on a parent's fundamental right to make decisions concerning the care and control of their children.  *Id.* at 262.  It held that constitutional infringement occurs "only where the behavior of the state actor compelled interference in the parent-child relationship."  *Id.* In other words, interference rises to an unconstitutional exercise of power when the state either requires or prohibits some parental activity.  *Id.* at 263 (citing *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980)).

The conduct complained of in this case, Ward's decision to allow the child's maternal grandmother to file for medical assistance on behalf of the child, is devoid of any form of constraint or compulsion.  Indeed, the type of interference that Robins asserts would impose a constitutional obligation on state actors, such as Ward, to contact parents to ascertain their choice of medical insurance for their child.  Based on these facts, Ward's actions simply did not deprive Robins of his right to care for and control his child.  Therefore, Robins' reliance on this fundamental liberty is unavailing.

### Conclusion

Robins is precluded from bringing claims on behalf of his minor child.  As to his own claims, they are barred by the *Rooker-Feldman* doctrine and judicial immunity. Robins cannot make out a § 1983 claim against any of the defendants.

Robins has already filed two amended complaints.  Leave to amend for a third time would be futile.  Therefore, this action will be dismissed with prejudice.